IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**FILED**

AUG **1 7** 2006

U.S. DISTRICT COURT
CLARKSBURG, WV 26301

ROGER BERTOVICH and KATHY
BERTOVICH, husband and wife
on behalf of themselves, all
others similarly situated, and
the general public,

        Plaintiffs,

v.                                          CIVIL ACTION NO. 5:05CV74
                                            (Judge Keeley)

ADVANCED BRANDS & IMPORTING,
CO., ET AL.,

        Defendants.

### AMENDED[1] MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS

This matter is before the Court on two motions: (1) "Defendant The Beer Institute's Motion to Dismiss The Amended Complaint," (Docket No. 165); and (2) "Domestic Manufacturer and Importer Defendants' Motion to Dismiss The First Amended Complaint," (Docket No. 175). After careful consideration of the pleadings and a review of all relevant authority, the Court **GRANTS** the defendants' motions to dismiss (dkt nos. 165 & 175).

### I.   PROCEDURAL HISTORY

This is a class action brought by Roger and Kathy Bertovich (the "Bertoviches"), husband and wife, on behalf of themselves, all

---

[1] Pursuant to Fed. R. Civ. P. 60, the sole purpose of this amended opinion/order is to include the word "not" which was inadvertently omitted from the last sentence on page 21 in the original order.

## MEMORANDUM OPINION AND ORDER GRANTING
## DEFENDANTS' MOTIONS TO DISMISS

others similarly situated, and the general public, against the

defendants (collectively the "Defendants"), The Beer Institute,

Inc. (the "Institute")[2], and "Domestic Manufacturers and Importers,

(the "Domestics")[3], which consists of over 100 beer and liquor

companies.

The Bertoviches originally instituted this action in the

Circuit Court of Hancock County, West Virginia on February 17,

2005. Pursuant to 28 U.S.C. §1441, the Defendants removed the suit

to this Court on May 26, 2005 based on diversity jurisdiction. On

---

[2] The Beer Institute is a not-for-profit trade association based in Washington, D.C. According to its website, the Institute was organized in 1986 to represent the industry before Congress, state legislatures and public forums across the country. It is committed to developing sound public policy that focuses on community involvement and personal responsibility. . . . The Beer Institute assures a role for industry members in formulating public policy goals and works to implement [the industry's] goals by providing representation before federal and state governmental bodies." www.beerinstitute.org

[3] Advanced Brands & Importing Co., Anheuser-Busch, Inc., Adolph Coors Company, Allied Domecq Spirits & Wine Americas, Inc., Allied Domecq North America Corp., Allied Domecq Spirits & Wine USA, Inc., Bacardi U.S.A., Inc., The Boston Beer Company, Brown-Forman Corporation, Brown-Foreman Beverages Worldwide, Coors Brewing Company, Diageo-Guinness USA, Inc., Diageo Inc., Diageo Investment Corporation, Diageo North America, Inc., Future Brands, LLC, Gramet Holdings Corporation, Guinness America, Inc., Guinness Enterprises, Inc., Guinness UDV Florida, Inc., Heineken USA, Inc., Heublein Holdings Corporation, Hiram Walker-A.V. Corp., Hiram Walker G&W Inc., Jim Bean Brands Co., Kobrand Corporation, InBev USA, LLC f/k/a Labatt USA, LLC, Maker's Mark Distillery Inc., Mark Anthony Brands Inc., Mark Anthony Brewing Inc., Miller Brewing Company, Regal China Corporation, Peak Wines International, Inc., Samuel Adams Brewery Company, Ltd. d/b/a The Twisted Tea Brewing Company, Santa Maria Advertising Corporation, Schenley Industries, Inc., Schenley International Co., Inc., Sidney Frank Importing Co., Inc., Skyy Spirits, L.L.C., Somerset Group, Inc., Somerset Partner, Inc., United Distillers Manufacturing, Inc., United Distillers North America, Inc., United Distillers, USA, Inc., and Wood Terminal Company.

## MEMORANDUM OPINION AND ORDER GRANTING
## DEFENDANTS' MOTIONS TO DISMISS

September 13, 2005, the Bertoviches filed an amended complaint to add defendants, and, on September 15, 2005, they requested an extension of the 120-day period provided by Rule 4(m) of the Federal Rules of Civil Procedure in which to perfect service on all defendants. On September 20, 2005, the Court provided the Bertoviches with an additional 120 days in which to perfect service on the numerous defendants named in this action. In response, on October 13, 2005, the defendants who had been served requested an extension of the time period in which to file a responsive pleading to the Bertoviches' Amended Complaint. On October 14, 2005, the Court entered an Order, giving the defendants until February 16, 2006 to file answers or responsive pleadings to the amended complaint.

In accordance with that schedule, on February 16, 2006, the Domestics and the Institute filed motions to dismiss the Bertoviches' Amended Complaint. On April 17, 2006, the Bertoviches responded to the Defendants' motions to dismiss. On April 21, 2006, they also voluntarily dismissed a group of defendants that included the foreign and non-entity manufacturers and distributors. Thereafter, on May 26, 2006, the Domestics filed their reply brief, and the Institute filed its reply brief on May 30, 2006. Therefore,

**MEMORANDUM OPINION AND ORDER GRANTING**
**DEFENDANTS' MOTIONS TO DISMISS**

the motions to dismiss of the defendants who remain in this case are fully briefed and ripe for review.

## II.   FACTUAL BACKGROUND AND ALLEGATIONS

The Bertoviches are residents of Weirton, West Virginia who claim that their children have been subjected to alcohol advertising.[4]  They state that it is both illegal and harmful for minors to purchase and consume alcoholic beverages manufactured and distributed by the Defendants.  They also claim that the Defendants receive at least a billion dollars per year as a result of the illegal and harmful consumption of alcoholic beverages by minors, and further assert that the Defendants know that at least 10 million minors are exposed to their marketing daily, and that their marketing appeals to minors.

The Bertoviches also allege that the Defendants' marketing efforts are designed to establish brand preference and to promote positive feelings about alcohol consumption.  They claim the Defendants' marketing efforts increase their revenues and profits in direct proportion to the number of minors who have brand preference and positive feelings about the consumption of alcohol.

---

[4]  The Bertoviches' Amended Complaint fails to provide the age of the Bertoviches' children or specific allegations concerning their alleged exposure to the Defendants' advertising and any resulting injury.

**MEMORANDUM OPINION AND ORDER GRANTING**
**DEFENDANTS' MOTIONS TO DISMISS**

Further, the Bertoviches assert that the Defendants recognize that an increase in advertising expenditures, with an emphasis on the underage audience, will yield increased sales of the advertised product among all demographic groups, including minors. They claim that the Defendants are fully capable of more narrowly focusing their marketing efforts on adults, so that substantially fewer minors are exposed.   Finally, the Bertoviches contend that the advertisements that minors view serve only to enrich the Defendants and possess no redeeming social value.

In their amended complaint, the Bertoviches contend that the Defendants have willfully, intentionally, recklessly, and negligently engaged in unfair and deceptive marketing efforts directed at minors.   These deceptive marketing efforts allegedly include advertising in media that minors read, see or use in disproportionate numbers; developing promotional themes specifically tailored to appeal to minors; conducting market research to target promotional and advertising efforts at children; internet marketing designed to attract and target minors, such as web games and contests; using cartoons, logos, and promotional items, such as apparel and toys; using actors and spokespersons who appear younger than the drinking age; and sponsoring events that appeal to minors.

**MEMORANDUM OPINION AND ORDER GRANTING**
**DEFENDANTS' MOTIONS TO DISMISS**

The Bertoviches further allege that the Defendants have made false, unfair and deceptive representations that their advertising and marketing efforts are in compliance with the regulations of the Institute and the Distilled Spirits Council of the United States, Inc.'s Code (the "DISCUS Code")[5]. Also, they allege that the Institute is wholly controlled by the Defendants and is an important facilitator, accomplice and participant in the Defendants' unfair and deceptive marketing schemes to minors.

Next, the Bertoviches allege that the Defendants have combined, conspired and confederated with each other and other persons, known or unknown, to: (1) market, sell, and distribute alcohol to minors in violation of West Virginia law and public policy; (2) fraudulently conceal their unlawful activity; and (3) unjustly enrich themselves at the expense of the Bertoviches, the Class, and society as a whole. According to the Bertoviches, the Defendants have furthered the conspiracy by forming organizations to advance their illegal goals.

The Bertoviches also allege that the Defendants' acts or omissions have unreasonably interfered with important rights of the

---

[5] The "DISCUS Code" is the Distilled Spirits Council of the United States, Inc.'s Code of Good Practice for Distilled Spirits Advertising and Marketing.

## MEMORANDUM OPINION AND ORDER GRANTING
## DEFENDANTS' MOTIONS TO DISMISS

general public.  Specifically, they assert that underage drinking injures the public by increasing drunk driving, violent crimes, property destruction, and disorderly conduct.

The Bertoviches assert economic injuries from the expenditures of "family assets" on illegally purchased alcohol and also the invasion of their parental rights to protect their children from the kind of marketing they claim the Defendants have targeted at their children.  They also assert public injuries proximately resulting from the Defendants' interference with public health, safety, convenience, comfort and peace.  Based on these alleged injuries, the Bertoviches allege claims against the Defendants under the West Virginia Consumer Credit and Protection Act ("WVCCPA") and W.Va. Code §60-2-15, which provides for regulation of advertising "alcoholic liquors" in West Virginia. They further allege common law theories of unjust enrichment, negligence, civil conspiracy, and public and private nuisance.  The Bertoviches also seek certification of the case as a class action, actual damages under the WVCCPA or $250.00 per violation, whichever is greater, compensatory damages for unjust enrichment, reasonable attorney fees, costs of suit, interest, and a trial by jury as part of their prayer for relief.

## MEMORANDUM OPINION AND ORDER GRANTING
## DEFENDANTS' MOTIONS TO DISMISS

### III.   LITIGATION HISTORY

Five courts have rejected complaints virtually identical to the one presently before the Court.[6]  See Alston v. Advanced Brands & Importing Co., 2006 WL 1374514 (E.D. Mich. May 19, 2006); Eisenberg v. Anheuser-Busch, Inc., 2006 WL 290308 (N.D. Ohio February 2, 2006); Hakki v. Zima Company, 2006 WL 852126 (D.C. Sup. Ct. March 28, 2006); Kreft v. Zima Beverage Co., No. 04CV1827 (Colo. Dist. Ct. Sept. 16, 2005); Tomberlin v. Adolphs Coors Company, No. 05CV545 (Wisc. Cir. Ct. February 16, 2006).

Faced with allegations very similar to those asserted by the Bertoviches here, the United States District Court for the Northern District of Ohio, in a comprehensive and thorough opinion, dismissed the complaint with prejudice and without leave to replead, decisively rejecting each cause of action advanced by the plaintiffs.  Eisenburg v. Anheuser-Busch, Inc., 2006 WL 290308 (N.D. Ohio Feb. 2, 2006).[7]  The similarities between the complaint filed here and the one filed in Eisenburg are startling.  Of the 181 paragraphs in the Bertoviches' Amended Complaint, over 100 of

---

[6] Furthermore, the district court for the Middle District of North Carolina is currently considering very similar claims and motions to dismiss in Wilson, et al. v. Zima Co., CA No. 04CVS626 (M.D. N.C.).

[7] Because Eisenberg accurately sets forth the analysis that is followed by the other courts faced with similar complaints, the Court finds it unnecessary to summarize the specific facts of each case.

## MEMORANDUM OPINION AND ORDER GRANTING
## DEFENDANTS' MOTIONS TO DISMISS

them can be found, nearly verbatim, in the Eisenberg complaint.
Furthermore, the remaining paragraphs in the Bertoviches' Amended
Complaint, excluding the paragraphs alleging public nuisance[8], add
nothing that substantially distinguishes it from the complaint
filed in Eisenberg. Furthermore, five of the attorneys that
represented the plaintiffs in Eisenberg represent the Bertoviches
in this action.

As the Bertoviches have done under West Virginia law, the
plaintiffs in Eisenberg, brought claims under the Ohio Consumer
Sales Practices Act, and for unjust enrichment, negligence, civil
conspiracy, and fraudulent concealment under the common law of the
State of Ohio.  Id. The Eisenberg plaintiffs sought redress for the

---

[8]   Alston v. Advanced Brands adequately addresses and analyzes a claim of
public nuisance which is nearly identical to the one presently before the Court.
The Alston court stated:

> While Plaintiff alleges that she has suffered a harm different in
> kind than the public-at-large, her harm is wholly unrelated to what
> she alleges is the public nuisance.  Plaintiff alleges that
> intoxicated teenagers interfere with public highways and walkways,
> and that this disorderly conduct damages the public health, safety,
> peace, convenience, comfort, and use of public rights-of-way.
> However, Plaintiff does not claim that she has been injured in a way
> different than the public-at-large because of the interference with
> the public highways and walkways.  Plaintiff has not identified a
> single injury she suffered as a result of an intoxicated teenager's
> interference with public right-of-ways.  Even if Defendants' action
> could properly be assigned as a contributing cause of public
> nuisance, Plaintiff did not suffer her economic loss because of the
> public nuisance.  Therefore, her nuisance claim fails as a matter of
> law.

Alston v. Advanced Brands, 2006 WL 1374514 at *34-35.

**MEMORANDUM OPINION AND ORDER GRANTING**
**DEFENDANTS' MOTIONS TO DISMISS**

deliberate and reckless targeting of underage consumers in the marketing of alcoholic beverages by the defendants through these claims. Eisenburg v. Anheuser-Busch, Inc., 2006 WL 290308 at *1-3. They also sought recoupment of monies they gave to their underage children, or that their children took without their consent, which, in turn, allegedly were spent on the illegal purchase of alcoholic beverages. Id. They also requested equitable relief, monetary damages, injunctive relief and costs. Id.

In Eisenberg, the Beer Institute and the Domestics filed motions to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The district court found that the complaint contained numerous fatal deficiencies, including failure to sufficiently plead an injury-in-fact and failure of the allegations to provide adequate notice to the defendants. Id. at *4-5. Furthermore, the court held that there was no basis for an unjust enrichment claim because the plaintiffs had failed to allege any economic transaction between the defendants and them, or even between the defendants and their children. Id. at *11-12. The negligence claim also failed in the court's estimation, because, even if a cognizable injury existed (something the court found was not established by the complaint), the injury was not a foreseeable consequence of the defendants' advertising and marketing tactics.

## MEMORANDUM OPINION AND ORDER GRANTING
## DEFENDANTS' MOTIONS TO DISMISS

Id. at *12-13. Additionally, the court found that the chain of causation had been broken by illegal acts of third parties, e.g., the buying and selling of alcohol involving underage consumers. Id. at *15-16.

For those reasons, in Eisenberg the district court concluded that the plaintiffs in that case had failed to state a claim upon which relief could be granted and that further amendment would be futile. The court ultimately granted the defendants' motions to dismiss, and dismissed the case with prejudice and without leave to further amend the complaint. Although the holding in Eisenberg is not binding on this Court, the Court finds that it is persuasive authority, particularly because the law in Ohio concerning injury-in-fact and causation is virtually identical to the law in West Virginia on those issues.

### IV.   STANDARD OF REVIEW

In ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must accept as true all well-pleaded material factual allegations. Franks v. Ross, 313 F. 3d 184, 192 (4th Cir. 2002). Furthermore, dismissal for failure to state a claim is properly granted where, assuming the facts alleged in the complaint to be true, and construing the allegations in the light most favorable to the plaintiff, it is clear, as a matter of law, that

11

no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. <u>Hishon v. King & Spalding</u>, 467 U.S. 69, 73 (1984); <u>Conley v. Gibson</u>, 355 U.S.41, 45-46 (1957).

### V. ANALYSIS

The Bertoviches' Amended Complaint purports to state six causes of action involving: (1) a violation of the WVCCPA, (2) unjust enrichment, (3) negligence, (4) public nuisance, (5) a violation of W. Va. Code §60-2-15, and (6) civil conspiracy. Under West Virginia law, each cause of action requires a cognizable injury and a causal connection between that injury and the Defendants' conduct. <u>See</u> W. Va. Code §46A-6-106(a)(requiring the alleged violation of WVCCPA be the cause of the alleged injury); W. Va. Code §55-7-9 (requiring that a statutory violation be the cause of the alleged injury); <u>United States v. Massenburg</u>, 2004 WL 2370694, *6 (S.D. W. Va. Oct. 21, 2004)(requiring that the benefit from unjust enrichment be conferred on defendant); <u>Aikens v. Debow</u>, 541 S.E.2d 576, 580-581 (W. Va. 2000)(stating that the elements of a negligence claim include injury and proximate cause); <u>Dixon v. American Indust. Leasing Co.</u>, 253 S.E.2d 150, 152 (W. Va. 1979) (requiring plaintiffs to plead an injury proximately caused by wrongful acts in furtherance of a conspiracy to allege a conspiracy

## MEMORANDUM OPINION AND ORDER GRANTING
## DEFENDANTS' MOTIONS TO DISMISS

claim); <u>International Shoe Co. v. Heatwole</u>, 30 S.E.2d 537, 540-541 (W. Va. 1944)(holding that public nuisance requires proof that defendant's conduct caused unreasonable interference with a right common to the general public). As the following discussion clarifies, however, the amended complaint fails to state any claim upon which relief can be granted because the Bertoviches have failed to allege facts that support a cognizable injury and establish the requirement of causation under any theory recognized under West Virginia law.

### A.  INJURY-IN-FACT

Each of the Bertoviches' claims fails to establish an actual injury to a legally protected interest.[9] The Bertoviches allege that the Defendants' marketing practices: (1) caused a loss of "family assets" as a result of their children's illegal purchase of alcohol, and (2) violated their parental right to protect their children from certain advertisements. The Bertoviches also allege

---

[9] Although the Bertoviches brought this complaint on behalf of themselves and other similarly situated parents, the Bertoviches cannot avoid alleging a personal injury by claiming injury to the purported class. "It is not sufficient, in a class action suit, to allege that injury has been suffered by other unidentified members of the class. Each named plaintiff must allege a personal injury." <u>Eisenberg v. Anheuser-Busch, Inc.</u>, 2006 WL 290308 at *4; <u>see also</u> <u>Warth v. Seldin</u>, 422 U.S. 490, 502 (1975) (holding that "[p]etitioners must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent")

that they have an independent claim for the injuries their children sustained as a result of the acts of third parties. West Virginia law, however, does not support a cognizable injury under any of these theories in this case.

### 1. Loss of Family Assets

To allege an "injury-in-fact," a plaintiff must assert an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent and not conjectural or hypothetical. See State v. Brandon B., 624 S.E.2d 761, 765 (W.Va. 2005). If the injury alleged by the Bertoviches in this case is hypothetical, it would not be recognized by West Virginia law. Aware of this problem, the Bertoviches argue that they have a property interest in any money given to their children because those funds would be "family assets."

The Defendants assert that the Bertoviches' claim for loss of "family assets" is not an "injury-in-fact," and that only plaintiffs who have "suffered an 'injury-in-fact'" can state a claim upon which relief can be granted. See Findley v. State Farm Mut. Auto. Ins. Co., 576 S.E.2d 807, 821 (W. Va. 2002). According to the Defendants, even if undefined "family assets" may have been spent by their children on alcoholic beverages, the Bertoviches'

14

**MEMORANDUM OPINION AND ORDER GRANTING
DEFENDANTS' MOTIONS TO DISMISS**

complaint contains only general allegations concerning the loss of "family assets."[10]

The Defendants further assert that any money the Bertoviches gave their children was a gift and, therefore, was the children's property. Roig v. Roig, 364 S.E.2d 794, 796 (W. Va. 1987) (holding that under the Uniform Transfer to Minors Act[11], property transferred to equitable ownership of minor children is not the property of the children's parents); W. Va. Code §36-7-11(b). Moreover, even if the Bertoviches' children purchased alcohol illegally with money stolen from the Bertoviches, thereby causing the Bertoviches some economic harm, the Defendants argue that the theft would be an independent tort for which they are not responsible. See Eisenburg v. Anheuser-Busch, Inc., 2006 WL 290308 at *3 (stating that any economic loss suffered by the parents would be the result of the children's theft and not the defendants' marketing). Therefore, the Defendants contend that there is no

---

[10] Bertoviches do not allege that their children actually consumed alcohol underage or that their personal assets were spent on the alcohol in their amended complaint.

[11] The Uniform Transfers to Minors Act ("UTMA") allows the donor of the gift to transfer title to a custodian who will manage and invest the property until the minor reaches a certain age. The transfers must satisfy specific requirements under the Internal Revenue Service to fall under the UTMA.

### MEMORANDUM OPINION AND ORDER GRANTING
### DEFENDANTS' MOTIONS TO DISMISS

legal theory under which the Bertoviches could recover the money they gave to their children.

In their response, the Bertoviches claim that, under West Virginia law, as parents, they, have the right to all monies earned or held by their children. Adkins v. Hope Eng'g & Supply Co., 94 S.E. 506 (W. Va. 1917) (recognizing that parents are entitled to damages for a minor child's diminished work capacity). The Bertoviches compare their alleged right to recover funds they gave to their children to a parent's right to sue for damages on behalf of a child injured by a third party. See Jordan v. Bero, 210 S.E.2d 618, 636-637 (W. Va. 1974). They further assert that the holding in Roig is inapposite because Roig concerned the Uniform Transfers to Minors Act ("UTMA"), and the transfers of monies at issue in this case were not transferred under that statute's provisions. Therefore, they reason that they have a right to any money given to their children and may recover for the loss of those funds.

Under West Virginia law, however, because the injury does not concern a legally protected interest, the Bertoviches have not suffered an injury-in-fact resulting from losses of their "family assets."  West Virginia law recognizes that "to have a valid *inter vivos* gift three requirements must be met: (1) there must be an intention on the part of the donor to make a gift; (2) there must

16

### MEMORANDUM OPINION AND ORDER GRANTING
### DEFENDANTS' MOTIONS TO DISMISS

be a delivery or transfer of the subject matter of the gift; and (3) there must be acceptance of the gift by the donee." Sleigh v. Sleigh, 445 S.E.2d 509, 513 (W. Va. 1994). When these requirements are met, the money becomes an irrevocable gift and the possession of the child.

It is likely that most, if not all, of the money the Bertoviches gave their children were gifts. The allegations in the complaint do no state otherwise.[12] As the district court stated in Eisenberg, the only likely economic loss suffered by the parents would be a result of some theft by their children. The Bertoviches, however, have not alleged that the Defendants' advertisements caused their children to steal money from them. Thus, because monies given to children by their parents are gifts to which the parents have no claim, the Bertoviches have no claim to any monies they may have given their children.

The arguments concerning Adkins and Jordan are strained, at best, under West Virginia law. While the Bertoviches draw an overly broad conclusion from very specific facts and holdings in

---

[12] "Parents and guardians in West Virginia and throughout the country, including Plaintiffs herein, are victimized as billions of dollars in family assets are transferred to Defendants as part of the far-reaching illegal trade in alcoholic beverages. And minors themselves, cynically manipulated by sophisticated and well-financed advertising and marketing efforts directed at them, provide Defendants with billions of dollars in ill-gotten profits." (Plaintiffs' Amended Complaint, ¶ 6.)

17

**MEMORANDUM OPINION AND ORDER GRANTING**
**DEFENDANTS' MOTIONS TO DISMISS**

those cases, <u>Adkins</u> and <u>Jordan</u> actually are unhelpful to their argument because neither case concerns money given to children by their parents, but rather money damages derived from physical injuries incurred by the children. Consequently, these cases fail to support the Bertoviches' claim that they have a legally protected interest in money they characterize as "family assets."

**2. Parent's Independent Claims For Children's Injuries**

Again, citing <u>Jordan v. Bero</u> and <u>Adkins v. Hope Eng'g & Supply Co.</u>, the Bertoviches assert that they have an independent claim for injuries sustained by their children as a result of the Defendants' actions. West Virginia courts have recognized that parents have a legally protected interest to sue for their own economic harm for actions aimed at their child, but only when the child sustains physical injury. <u>Glover v. Narrick</u>, 400 S.E.2d 816, 824 (W.Va. 1990); <u>Long v. City of Weirton</u>, 214 S.E.2d 832 (W.Va. 1975); <u>Jordan</u>, 210 S.E.2d at 636. As stated above, West Virginia law also requires a showing of an "actual or imminent injury." <u>State v. Brandon B.</u>, 624 S.E.2d at 765.

In <u>Jordan</u>, which involved a child who suffered brain injuries as a result of a car accident, the West Virginia Supreme Court of Appeals held that the child's father had a right to collect medical expenses on behalf of his son. <u>Jordan</u>, 210 S.E.2d at 636-637.

**MEMORANDUM OPINION AND ORDER GRANTING
DEFENDANTS' MOTIONS TO DISMISS**

Unlike the plaintiff in <u>Jordan</u>, however, the Bertoviches allege no physical injuries to their children; indeed, in paragraph 151 of their amended complaint, they specifically state that, in this lawsuit, they seek no recovery for any physical injuries.

Furthermore, they allege no actual injuries of any kind to their children, and allege only general injuries incurred by all teenagers who consume alcohol.[13] While Paragraph 119 recounts risks of underage drinking, it alleges no specific damage or injury sustained by the Bertoviches' children as a result of underage drinking. Accordingly, the damages set forth in Paragraph 119 amount to nothing more than hypothetical injuries that are legally inadequate and fail to meet the requirement of "actual or imminent injury" as discussed in <u>State v. Brandon B</u>.

### 3. Invasion of Parental Rights

The Bertoviches also contend that the Defendants' alleged advertising schemes solicited illegal activity by their children

---

[13] Paragraph 119 of the Amended Complaint states: "The human suffering underage drinking causes is enormous and undeniable. Alcohol consumption by teenagers causes physical damage to the brain; interferes with mental, emotional, and social development; degrades academic performance; and increases the incidence of risky sexual behavior, teenage pregnancy, juvenile delinquency and violent crime. Approximately 25% of all teenagers admitted to hospital emergency rooms in the United States have alcohol in their bloodstream. Defendants' marketing practices increase the quantity of alcohol consumed by minors in the United States and the human suffering caused by underage drinking."

**MEMORANDUM OPINION AND ORDER GRANTING
DEFENDANTS' MOTIONS TO DISMISS**

and violated their parental rights to protect their children from such activity. See e.g., Troxel v. Granville, 530 U.S. 57, 66 (2000) (stating that "we have long recognized the fundamental right of parents to make decisions concerning the care, custody, and control of their children"); Washington v. Glucksberg, 5201 U.S. 702, 720 (1997). The Defendants contend, however, that the Bertoviches have incurred no injury-in-fact because advertising does not interfere with the right of parents to make decisions about how to raise their children. See Eisenberg v. Anheuser-Busch, Inc., 2006 WL 290308 at *4 (stating that "all of the cited cases dealing with an interference with parental rights involve state actors interfering with basic parental decision-making, and these cases provide no support because there is no interference at issue in this case").

As in Eisenberg, where the plaintiffs failed to allege that the defendants usurped their parental rights to make decisions for their children, the Bertoviches also have made no such allegations. In point of fact, they provide no explanation at all as to how the Defendants may have directly interfered with their parental rights or, as private parties, had the capacity to force the Bertoviches' children to view the complained-of advertisements. Clearly, parents possess the right to make fundamental decisions regarding their

## MEMORANDUM OPINION AND ORDER GRANTING
## DEFENDANTS' MOTIONS TO DISMISS

children's upbringing; they have no legal right, however, to prevent other private parties from attempting to influence their children. See Eisenberg v. Anheuser-Busch, Inc., 2006 WL 290308 at *4. Thus, the Defendants' marketing practices do not interfere with the Bertoviches' parental rights. Accordingly, the Court concludes that theories asserted by the Bertoviches with respect to their alleged injuries are not cognizable under West Virginia law.

**B.   CAUSATION**

Both the Institute and the Domestics argue that there is no causal connection between the Bertoviches' alleged injury and any act or omission of theirs. The Bertoviches respond that the Defendants' actions were a proximate cause of underage drinking that led to the injuries they have alleged. The issue of causation can be analyzed under West Virginia case law and also with reference to cases from other jurisdictions whose facts are nearly identical to the matter now before the Court.

### 1.  Sufficient Allegations of Causation

The Institute argues that the Bertoviches have failed to allege facts that causally connect their purported injuries to any acts of the Defendants as required by West Virginia law.   In support of its argument, the Institute claims that the Bertoviches have not alleged:  (1)  that  the  Institute  makes,  sells,  or

## MEMORANDUM OPINION AND ORDER GRANTING
## DEFENDANTS' MOTIONS TO DISMISS

advertises alcoholic beverages; (2) that they or their children saw or heard statements made by the Institute; or (3) that any specific conduct by the Institute has resulted in a legally compensable injury to the Bertoviches or their children.

The Institute further asserts that the Bertoviches are seeking relief (rescission and disgorgement of amounts purportedly received from illegal retail sales of alcohol to minors, and enjoinment from marketing activities from the Institute) from it for conduct in which it is not alleged to have engaged. Further, the Institute claims that the Bertoviches have failed to plead a "but for" causal connection.

The Domestics also argue that the Bertoviches have failed to allege both causation-in-fact and proximate cause. They claim that the Bertoviches have failed to allege: (1) that they themselves were deceived by, or even saw or heard, any of the Domestics' advertising, or that they ever consumed any of the Domestics' products while they were underage; (2) that any underage child of the Bertoviches bought any of the Domestics' products; (3) that any underage child of the Bertoviches saw or heard any of the Domestics' advertising (and if so, which of the Domestics); (4) that any underage child of the Bertoviches was deceived by any of the Domestics' advertising; and (5) that any illegal purchase or

22

### MEMORANDUM OPINION AND ORDER GRANTING
### DEFENDANTS' MOTIONS TO DISMISS

consumption by any underage child of the Bertoviches was caused by any of the Domestics' advertising.

Both the Institute and the Domestics assert that the Bertoviches' Amended Complaint fails to identify which of their children, if any, were exposed to any of the Domestics' marketing and advertising practices. Accordingly, the Defendants argue that the Bertoviches cannot satisfy the fundamental element of causation.

In response to the arguments regarding cause-in-fact and proximate cause, the Bertoviches claim that the allegations contained in their amended complaint satisfy liberal federal notice pleading requirements with regard to each of the Defendants. In support of this, they argue that the Defendants' marketing campaigns and product development are, at a minimum, a "substantial factor" causing underage drinking and that, as such, can be considered a proximate cause. Hundall v. Mate Creek Trucking, Inc., 490 S.E.2d 56 (W. Va. 1997). Furthermore, they argue, that to satisfy notice pleading, they need not allege or prove that each individual defendant engaged in a separate tort that caused a specific harm, and also need not plead facts supporting the allegations in their amended complaint.

## MEMORANDUM OPINION AND ORDER GRANTING
## DEFENDANTS' MOTIONS TO DISMISS

Although under liberal notice pleading every fact need not be plead, there still must be sufficient information to satisfy the requirement of causation. <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506, 512 (2002); <u>Bass v. E.I. Dupont de Nemours & Co.</u>, 324 F.3d 761, 765 (4th Cir. 2003). After reviewing a complaint nearly identical to the one here, the district court in <u>Eisenberg</u> concluded:

> Plaintiffs fail to plead facts that would establish which Defendants were the proximate cause of their injuries. [] Plaintiffs have failed to identify which of their children, if any, were exposed to which Defendants' marketing and advertising practices.[] The Complaint also fails that any underage consumer attributed their purchase or consumption of alcoholic beverages to the advertising and marketing practices of the Defendants. Thus, the Complaint does not allege any injury that is closely connected to the Defendants' alleged bad practices. [] This court cannot say that, as pled, Defendants' alleged practices are so closely connected to the Plaintiffs' alleged loss that the law is justified in imposing liability in this case.

<u>Eisenberg v. Anheuser-Busch, Inc.</u>, 2006 WL 290308 at *16.

In <u>Findley v. State Farm Mut. Auto. Ins. Co.</u>, 576 S.E.2d 807 (W.Va. 2002), the West Virginia Supreme Court of Appeals addressed the issue of causation. "[T]here must be a causal connection [between] the injury and the conduct forming the basis of the

## MEMORANDUM OPINION AND ORDER GRANTING
## DEFENDANTS' MOTIONS TO DISMISS

lawsuit." <u>Findley</u>, 576 S.E.2d at 821. It is clear that, to bring

a suit under any of the theories asserted by the Bertoviches, they

must allege a causal connection between their alleged injury and

the Defendants' alleged acts or omissions.

As recognized in <u>Eisenberg</u>, the causation analysis is similar

to the analysis a court undertakes to determine whether the

plaintiffs have alleged an injury-in-fact:

> There are several cases around the country
> that support a finding that a manufacturer's
> advertising efforts cannot be the legal cause
> of harm to a plaintiff when the plaintiff
> engages in illegal acts. In this case, the
> Plaintiffs alleged injury is even further
> removed from the Defendants actions and
> control, because the Plaintiffs, as parents,
> may not ever have been exposed to the
> Defendants' marketing techniques, nor are they
> the party directly affected by the messages
> contained therein. The primary injury, if
> any, is suffered by the underage consumer.
> The parents' injuries can only be derivative
> of an injury to their child.

<u>Eisenberg v. Anheuser-Busch, Inc.</u>, 2006 WL 290308 at *16.

The Bertoviches' Amended Complaint contains no allegation that

directly links the Defendants' actions or omissions to the

Bertoviches' alleged injury. As noted above, any injury to the

Bertoviches is derivative of an injury to their children, who are

the underage consumers. The Bertoviches' Amended Complaint contains

## MEMORANDUM OPINION AND ORDER GRANTING
## DEFENDANTS' MOTIONS TO DISMISS

only general allegations, never once going so far as to indicate an instance where a Defendant's marketing practice led their underage children to purchase and consume alcohol.  Further, their amended complaint does not allege a specific loss to a specific fund. Although the amended complaint in this case does identify some particular marketing practices, it fails to indicate which practices were viewed by whom, and to what effect the marketing practices influenced their underage children to purchase and consume alcohol.

As the court stated in Eisenburg, "[t]his Court cannot say that, as pled, Defendants' alleged practices are so closely connected to the Plaintiffs' alleged loss that the law is justified in imposing liability in this case." Eisenberg v. Anheuser-Busch, Inc., 2006 WL 290308 at *16.  The amended complaint in this case also fails to meet the required standards to survive a motion to dismiss for failure to state a claim because causation is not sufficiently pled.

### 2.  Intervening Illegal Acts

Even if the Court were to find that the Bertoviches had pled causation sufficiently, the Domestics assert that their advertising did not proximately cause any injury to the Bertoviches.  In support, the Domestics argue that the chain of causation in this

### MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS

case is broken by intervening criminal acts (underage persons illegally obtaining alcohol and, possibly, retailers or complicit adults illegally providing it), which are the direct and legal causes of any injury to the Bertoviches. Therefore, the Domestics argue that the Bertoviches' alleged proximate causation fails because the illegality of underage drinking breaks any chain of causation between the Defendants' advertising and the alleged purchasing of alcohol by the Bertoviches' underage children.

In response to the Defendants' argument, the Bertoviches allege that the chain of causation is not broken because (1) an intervening act only breaks the chain if it is unforeseeable, and (2) an intervening cause must be a negligent act, or omission, that constitutes a new effective cause and operates independently of any other act. They also argue that reasonable minds could differ with respect to whether intervening acts of other third parties in purchasing alcohol for underage consumers are unforeseeable and the only cause of underage drinking. Accordingly, the Bertoviches submit that their complaint is sufficient to permit discovery, and that a motion to dismiss for failure to state a claim should not be granted.

In support of their argument that a criminal act is an intervening cause that breaks the chain of causation, the

## MEMORANDUM OPINION AND ORDER GRANTING
## DEFENDANTS' MOTIONS TO DISMISS

Defendants cite <u>Yourtee v. Hubbard</u>, 474 S.E.2d 613 (W.Va. 1996),
and <u>Ashworth v. Albers Med., Inc.</u>, 410 F. Supp.2d 471 (S.D. W.Va.
2005). "Generally a willful, malicious, or criminal act breaks the
chain of causation." <u>Yourtee</u>, 474 S.E.2d at 620. In <u>Ashworth</u>, the
court concluded that a drug manufacturer was not liable for
injuries caused by alleged criminal acts of third parties
introducing counterfeit versions of the manufacturer's drug into
the stream of commerce. <u>Ashworth</u>, 410 F. Supp.2d at 479-481.

The Defendants also cite a number of cases from West Virginia
and other jurisdictions to support their contention that an
intervening illegal act precludes proximate cause. See <u>Harbaugh v.
Coffinbarger</u>, 543 S.E.2d 338, 345 (W.Va. 2000) (holding that
decedent's decision to play Russian roulette was "[a]n intervening
cause . . . making it and it only, the proximate cause of the
injury" even though defendant had supplied the loaded gun); <u>Hartman
v. Bethany Coll.</u>, 778 F. Supp. 286, 292 (N.D.W.Va. 1991) (college's
failure to remind a minor of West Virginia's drinking age and the
dangers of drinking while underage was not proximate cause of her
injuries resulting from drinking); <u>Goodwin v. Anheuser-Busch Cos.
Inc.</u>, 2005 WL 280330 (L.A. Super. Ct. Jan. 28, 2005) (defendant's
advertising was not the legal cause of plaintiff's injury where

**MEMORANDUM OPINION AND ORDER GRANTING
DEFENDANTS' MOTIONS TO DISMISS**

illegal acts by the underage plaintiffs themselves who purchased alcohol were involved).

These cases provide a good overview of the applicable law concerning intervening acts and proximate cause, and support the Defendants' arguments. In order for an underage person to consume alcohol, there must be at least one illegal act, whether it is a retailer selling alcohol to an underage consumer or a person of age purchasing alcohol for someone underage. In either instance, the law prohibits both the selling and distribution of alcohol to minors. W. Va. Code §§ 60-3-22 and 60-3A-24.

Regarding intervening criminal acts, the Bertoviches argue that such acts only break the chain of causation when they are unforeseeable. In re Flood Litigation, 607 S.E.2d 863, 878 (W.Va. 2004). Additionally, "an intervening cause, in order to relieve a person charged with negligence in connection with an injury, must be a negligent act, or omission, which constitutes a new effective cause and operates independently of any other act, making it and it only, the proximate cause of the injury." Sydenstricker v. Mohan, 618 S.E.2d 561, 568 (2005). The Bertoviches cite a number of West Virginia cases indicating that proximate cause is difficult to define and that there may be more than one proximate cause of an injury. When several factors contribute to produce an injury, one

**MEMORANDUM OPINION AND ORDER GRANTING
DEFENDANTS' MOTIONS TO DISMISS**

actor's negligence will be considered a proximate cause of the harm if it was a substantial factor in producing the injury. Hundall v. Mate Creek Trucking, Inc., 490 S.E.2d 56, 59-60 (W. Va. 1997).

Although West Virginia does require that an intervening illegal act be unforeseeable, as was recognized in Eisenberg, it is unforeseeable that the marketing practices of the Defendants would lead to the illegal purchase or sale of alcoholic beverages to minors. "[T]hough it may be foreseeable that underage drinkers will be inspired by marketing and advertising to want to try the Defendants' products, there is no injury inherent in an underage person's desire to drink. An injury can only occur when the underage person illegally obtains and consumes alcohol." Eisenberg v. Anheuser-Busch, Inc., 2006 WL 290308 at *13.

In further support of the conclusion that the Defendants' acts were not a proximate cause of the plaintiffs' alleged injury is the three-tier system in place in West Virginia involving the sale and distribution of alcoholic beverages. The Defendants are not able to sell their products directly to individual consumers. They may only sell their products to wholesalers approved by the State of West Virginia, who in turn may then sell their products to retailers, who may then sell the product to consumers. "In order for Defendants' alleged marketing tactics to result in any injury

## MEMORANDUM OPINION AND ORDER GRANTING
## DEFENDANTS' MOTIONS TO DISMISS

to the Plaintiffs, at least two levels of third parties must intervene by violating the law. Both the underage consumer and some of-age adult or retailer must conspire to illegally obtain alcohol for the Plaintiff's child." Id. at *14.

In the matter at hand, the alleged illegal acts of third parties breaks the necessary chain of causation. The amended complaint is devoid of any allegation that the Defendants are part of some larger conspiracy that would cause retailers or other legal adults to risk criminal and administrative sanctions by providing alcohol to underage consumers. Therefore, an illegal intervening act precludes the Defendants' advertising from being the proximate cause of any injury alleged by the Bertoviches.

### 3. Common Knowledge That Underage Drinking Is Illegal

The Domestics also argue that, because it is common knowledge that underage drinking is illegal, their advertising cannot be the proximate cause of any injury in this action. They assert that attempts to impose liability on alcohol beverage manufactures for illegal conduct by underage alcohol purchasers have repeatedly been rejected by courts because it is common knowledge that persons under the age of twenty-one may not legally drink. Therefore, the Domestics assert the Bertoviches' alleged proximate causation

argument fails because advertising cannot overcome common knowledge about the risks of alcohol and the illegality of underage drinking.

The Bertoviches, however, contend that cases regarding the knowledge of illegality are inapposite because they address liability for the health consequences of drinking, not marketing to induce the purchase of alcohol by underage children. Additionally, they contend that reasonable minds could differ as to whether the Defendants' advertising has had an effect on underage drinking. They also assert that their amended complaint specifically details the various ways in which the Defendants' marketing campaigns and product development are, at a minimum, a "substantial factor" causing underage drinking.

In <u>Smith v. Anhueser-Busch, Inc.</u>, 599 A.2d 320 (R.I. 1991), the plaintiffs asserted that "the defendants' media advertising caused the plaintiff, who was under age, to purchase and consume beer, to drive while intoxicated and to suffer serious permanent injuries." <u>Id</u>. The Rhode Island Supreme Court rejected this theory as a matter of law, however, holding that advertising cannot overcome common knowledge about the risks of alcohol and the illegality of drunk driving. <u>Id</u>. at 321. Moreover, in <u>Eisenberg v. Anheuser-Busch, Inc.</u>, 2006 WL 290308 at *13; <u>Robinson v. Anheuser-Busch, Inc.</u>, 2000 U.S. Dist. LEXIS 22474 (M.D. Ala. 2000);

<u>Overton v. Anhueser-Busch Co.</u>, 517 N.W.2d 308 (Mich. Ct. App. 1994); <u>Gawloski v. Miller Brewing Co.</u>, 644 N.E.2d 731 (Ohio Ct. App. 1994); and <u>Malek v. Miller Brewing Co.</u>, 749 S.W.2d 521 (Tex. Ct. App. 1988), the courts all agreed that public knowledge of the risks associated with alcohol and the common knowledge of the illegality of underage drinking could not be overcome by advertising.

These cases rely heavily on public policy considerations concerning the refusal to impose a duty on entities who disseminate ideas and messages through the mass media to protect underage consumers from the possible ramifications of those messages. <u>Eisenberg v. Anheuser-Busch, Inc.</u>, 2006 WL 290308 at *17. "As a general rule, a manufacturer does not have a duty to warn consumers of dangers inherent in the use of the manufacturer's product if those dangers are generally known and recognized by the ordinary consumer." <u>Gawloski v. Miller Brewing Co.</u>, 644 N.E.2d at 163. "[A] commercial advertisement showing beer consumption in a favorable light or as a positive activity, does not have the effect of negating basic common knowledge about the dangers of alcohol consumption." <u>Robinson v. Anheuser-Busch, Inc.</u>, 2000 U.S. Dist. LEXIS 22474 at *6. (citing <u>Gawloski v. Miller Brewer Co.</u>, 664 N.E.2d 731, 735 (Ohio Ct. App. 1994)). "Moreover, a minor's age

## MEMORANDUM OPINION AND ORDER GRANTING
## DEFENDANTS' MOTIONS TO DISMISS

does not neutralize any common knowledge about the dangers of alcohol consumption." Id. at 6-7 (citing Smith v. Anheuser Busch, 599 A.2d 320 (R.I. 1991)).

The case at bar is based upon alleged injuries incurred as a result of the fact that minors have viewed advertisements, and then allegedly purchased and consumed alcohol. As in the cases discussed above, however, the Bertoviches' claims cannot overcome the fact that it is common knowledge that the consumption of alcohol is both illegal and dangerous for underage persons. Although the Bertoviches have pointed to various marketing practices that may be distasteful and irresponsible, no laws currently prohibit alcohol manufacturers from advertising their products in this way. The arguments raised by this case concerning advertising, thus, are more suited to legislative consideration and do not allege facts sufficient to satisfy the legal requirement of causation.

## V.   CONCLUSION

For the reasons discussed, the Court **CONCLUDES** that the Bertoviches have failed to state a claim upon which relief can be granted because they do not allege a cognizable injury that would permit recovery, and also do not allege any facts that would connect any of the Defendants' conduct to that injury. As a result,

## MEMORANDUM OPINION AND ORDER GRANTING
## DEFENDANTS' MOTIONS TO DISMISS

it is unnecessary to individually analyze each cause of action brought by the Bertoviches because their complaint, on its face, fails as a matter of law.

Accordingly, the Court **GRANTS** the Defendants' motions to dismiss (dkt nos. 165 and 175), **CANCELS** the status conference scheduled for **August 15, 2006 at 10:00 a.m.** and **DISMISSES WITH PREJUDICE** Civil Action 5:05CV74 from the docket of this Court.

The Clerk is directed to transmit copies of this Order to counsel of record.

DATED: August _____*16*_____, 2006.


_Irene M. Keeley_
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE